WEITAO (WALTER) CHEN, ESQ
New York Bar No. 5656079
chen@faan.com
**CHEN LAW FIRM, PLLC**
60 Cutter Mill Rd, Suite 100C
Great Neck, NY 11021
Telephone: 718.766.2567
Facsimile: 718.360.9695

*Attorneys for Plaintiff Weitao Chen*

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WEITAO CHEN,** | |
| Plaintiff, | Case Number: 2:23-cv-05324 |
| v. | |
| **AMAZON.COM, INC.,** | **COMPLAINT AND** |
| | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff WEITAO CHEN ("Plaintiff") complains as follows against Defendant Amazon.com, Inc. ("Amazon") on information and belief:

### NATURE OF THE ACTION

1. This is an action for defamation in violation of the common law of the State of New York.

### PARTIES

2. Plaintiff is a citizen of China, and a resident of the State of New York with her residence located in Great Neck, Nassau County.

3. Amazon is a corporation organized under the laws of the State of Delaware with

its principal place of business located in Seattle, Washington.

## JURISDICTION

4. This Court has subject matter jurisdiction over this dispute pursuant to Plaintiff is deemed to be a citizen of a foreign state, i.e. China under 28 U.S.C. § 1332(a)(2).

5. Plaintiff is a citizen of China, domiciled in the State of New York.

6. Amazon is a Delaware corporation with its principal place of business in the State of Washington.

7. Plaintiff is deemed to be a citizen of a foreign state, i.e. China, under 28 U.S.C. § 1332(a)(2).

8. Amazon is deemed to be a citizen of the State of Delaware and the State of Washington under 28 U.S.C. § 1332(c)(1).

9. The amount in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

10. The United States District Court for the Eastern District of New York is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(1) because Amazon is deemed to reside in the State of New York where this judicial district is located.

11. Amazon is deemed to reside in this judicial district under 28 U.S.C. § 1391(c) because the company is subject to personal jurisdiction in the State of New York based on its substantial, continuous and systematic activities that include, but are not limited to, maintaining a fulfillment center located at 6 W 35th St, New York, NY 10001, and an office at 26-15 Brooklyn Queens Expy W, Queens, NY 11377.

## FACTUAL ALLEGATIONS

### A. PLAINTIFF'S PROFESSIONAL REPUTATION

12. Plaintiff is an attorney licensed to practice law by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, and is a member of the State Bar of New York. Plaintiff also routinely practices before the United States Patent and Trademark Office (the "USPTO").

13. Plaintiff serves as an attorney at Chen Law Firm, PLLC, d.b.a. Chen Law Firm ("Chen") and manages the firm's trademark prosecution team.

14. The trademark prosecution team is responsible for preparing, filing, and obtaining trademark applications and registrations for applicants before the USPTO.

15. Plaintiff has practiced law since 2018 and has prosecuted thousands of trademark applications before the USPTO.

16. Plaintiff has established himself as preeminent trademark attorney with a national and international practice having represented numerous clients in the United States from such countries as China and the United States.

17. Plaintiff routinely represents and promotes Chen's trademark practice both online and in-person meetings.

18. Plaintiff has established an impeccable professional reputation. He has never been disciplined by the USPTO's Office of Enrollment and Discipline ("OED") despite having prosecuted thousands of trademark applications. He has also never had a disciplinary action commenced against her by the Disciplinary Board of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department.

19. Plaintiff, in association with Chen, is well known to Examining Attorneys at the USPTO based on appearing as Attorney of Record on thousands of trademark applications.

20. The United States trademark community is a very small community where attorney members of the community constantly encounter one another both in adversarial proceedings and in conferences and meetings.

21. The international trademark community is also an extremely small community. International attorney and firm groups discuss all matters in different forum group chats and are constantly in contact. Examples of the communication shared within those groups are new rule proposals or when the USPTO issues sanctions on a filer or representatives. Such news spreads through these groups immediately.

22. The international trademark industry is full of fraudulent agencies that claim to have legitimate United States licensed attorneys on staff to perform filings with the USPTO, but, in fact, do not have such attorneys on staff. As a result, many foreign applicants seek to engage United States law firms and counsel they can trust and that have not been sanctioned by OED. As such, maintaining a sterling reputation is essential to developing and maintaining a successful international trademark practice.

23. Plaintiff has worked tirelessly to help establish himself and Chen as a legitimate United States firm and attorney that international clients can rely on for their USPTO filing needs. As a result, clients frequently seek out Plaintiff's expertise when their current Attorney of Record encounters problems with the USPTO during the trademark application process.

**B. THE AMAZON BRAND REGISTRY**

24. The Amazon Brand Registry ("ABR") is an online service that allows accepted

applicants to register their intellectual property with Amazon so that the company can employ its unique technology to prevent, detect and remove infringing and counterfeit goods and content. As such, getting registered by ABR is highly sought after by many trademark owners.

25. Admission into ABR is through an application process whereby Amazon investigates the applicant and verifies ownership and registration of certain intellectual property rights, such a trademark, with the USPTO.

26. As part of the ABR application process, a digital code is sent to the Attorney of Record associated with the applicant's trademark registration at the USPTO. The Attorney of Record is then obligated to give the digital code to the proper owner of the mark. The mark owner then inputs the digital code to finalize the verification process and obtain ABR registration.

27. Many of Chen's clients seek registration with ABR. Plaintiff serves as Attorney of Record with the USPTO for the marks that seek and have sought registration with ABR through Chen.

### C. AMAZON'S DEFAMATORY CONDUCT

28. On or around March 3, 2023, Plaintiff received verbal notice that multiple clients had their ABR applications rejected after sending them their respective verification codes.

29. The reason the applications were rejected by ABR was stated in an e-mail from Amazon. The email stated: "we have concluded that the brand/user is currently ineligible for Brand Registry since the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions." The

email further states: "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past.".

30. The first clear inference from Amazon's application rejection email is that the current Attorney of Record was associated with trademark prosecution conduct that resulted in a mark being sanctioned and/or invalidated by the USPTO.

31. The second clear inference from Amazon's application rejection email is that the current Attorney of Record for the mark has engaged in abusive and/or risky conduct while practicing before the USPTO.

32. The final clear inference from Amazon's application rejection email is that the client must terminate the current Attorney of Record and engage different counsel in order to obtain ABR registration.

33. As set forth earlier, Plaintiff has never had an OED complaint filed against him with the USPTO despite having prosecuted thousands of trademark applications. Moreover, Plaintiff has never had a disciplinary action commenced against him by the Disciplinary Board of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department.

34. On March 24 and 28 2023, Plaintiff sent two letters to trademarks@amazon.com, requesting Amazon to stop its defamatory conduct.

35. On April 5, 2023, Plaintiff sent an email to Brad M. Behar, counsel for Amazon, and scheduled a phone call to discuss this issue of Amazon making false statements concerning Plaintiff in its ABR application rejection e-mails.

36. On April 6, 2023, Brad M. Behar and Plaintiff had a telephonic conference to

discuss the issues regarding Chen's clients' ABR application rejections.

37. During this discussion, Brad M. Behar indicated that Amazon had implemented an internal process during the ABR investigation whereby the company would rely on certain documentation from the USPTO that listed marks that had previously been flagged for various reasons. Mr. Behar further stated that Amazon did no further investigation to confirm that the current Attorney of Record was counsel for the client at the time of the alleged questionable conduct. Brad M. Behar and Plaintiff discussed that under Amazon's current ABR investigation procedure, if a mark was previously filed by counsel that is being investigated by OED and a new attorney took over as Attorney of Record, the new attorney would be inappropriately flagged and associated with the actions of the past attorney.

38. Plaintiff routinely takes over as Attorney of Record for clients' trademark applications when their engaged representative experiences difficulties during the USPTO examination process.

39. Since the April 6, 2023 discussion, Plaintiff has sent six (6) separate follow-up emails to Brad M. Behar, counsel for Amazon, including an email providing Plaintiff's Certificate of Good Standing issued on April 13, 2023, by the Appellate Division of the Supreme Court of the State of New York Second Judicial Department. Plaintiff did not receive any substantive responses to these emails. Instead, Brad M. Behar requested other documents, which are not discussed in the April 6, 2023 discussion, and are not relevant to the issue involved.

40. On June 21, 2023, Ambika Kumar, another attorney for Amazon from a different law firm notified me that they represent Amazon in connection with the allegedly defamatory

conduct. However, after four (4) more follow-up emails and multiple delays, Plaintiff has not received any substantive response yet.

41.     To date, Plaintiff has not received a substantive response to any of her emails sent to Amazon concerning this matter.

42.     Since Amazon's March 23, 2023 application rejection emails to Chen's clients, the firm has had multiple clients request that Plaintiff's name be removed from their trademark files and replaced with a different Attorney of Record. These removal requests have been made immediately after Amazon rejected their ABR applications and advised them that their Attorney of Record had been involved in a trademark application that had been sanctioned and or invalidated by the USPTO.

43.     Since March 23, 2023, at least for fifty-four (54) more trademarks, Plaintiff's clients have requested that Plaintiff's name be removed from and/or refused to list him as Attorney of Record on their trademark files. Plaintiff maintains that these clients have received an ABR application rejection e-mail or have learned that he is associated with mark registrations that have been flagged for risky or abusive USPTO conduct during the ABR application review process.

44.     Each time Plaintiff hears that a client wants to remove his name from their application, the more anxious he gets about this entire situation. Plaintiff has also suffered professional humiliation and demoralization because Chen's clients and prospective clients believe him to be a bad actor that is responsible for the sanctioning and/or invalidation of numerous mark applications with the USPTO.

45.     Plaintiff believes that the content of Amazon's ABR application rejection e-mails

that have been disseminated to his clients has directly harmed his professional reputation and continues to immediately and imminently harm his professional reputation.

46. Plaintiff believes that the content of Amazon's ABR application rejection e-mails that have been disseminated to his clients has resulted in his inclusion on a list of "Amazon Blacklisted Attorneys" that has harmed his professional reputation and continues to immediately and imminently harm his professional reputation.

## CLAIM FOR RELIEF - DEFAMATION

47. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46, above.

48. Amazon's ABR application rejection e-mail contained the statement "the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions."

49. Amazon's ABR rejection email contained the further statement, "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past.".

50. Amazon statements in the ABR rejection email were reasonably identifiable to be directed to the Plaintiff since it was transmitted to her clients and she was the Attorney of Record for the clients' USPTO trademark registrations.

51. Amazon's statements in ABR rejection email were false and defamatory in, at least, the fact that Plaintiff has not engaged in trademark prosecution conduct that resulted in the mark being sanctioned and/or invalidated by the USPTO for violating its terms and

conditions.

52. Amazon's statements in ABR rejection email were false and defamatory in, at least, the fact that Plaintiff has not been involved with any abusive or risky conduct in the past while prosecuting trademarks before the USPTO.

53. In fact, Plaintiff has never had an OED complaint filed against him with the USPTO despite having prosecuted thousands of trademark applications. Moreover, Plaintiff has never had a disciplinary action commenced against him by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department.

54. Amazon's publication of the ABR rejection email containing the above defamatory statements were unprivileged and disseminated to several of Plaintiff's clients.

55. Amazon's publication of the ABR rejection email containing the above defamatory statements were done intentionally, recklessly or negligently in that they were directed toward the current Attorney of Record for the associated registered client trademarks without regard for, or otherwise investigating, whether the current Attorney of Record was counsel at the time of the alleged inappropriate conduct or was in any way responsible for the alleged inappropriate conduct.

56. Amazon's defamatory statements clearly imputes Plaintiff's lack of fitness for a trade, business or profession, thereby constituting defamation per se.

57. Plaintiff is entitled to presumed damages based on Amazon's defamation per se.

58. Alternatively, Plaintiff has suffered actual damages in an amount exceeding $75,000, exclusive of interest and costs, subject to proof at trial.

59. Amazon continues to disseminate the ABR rejection emails containing the above

defamatory statements, and the ongoing direct results of doing so, have and will continue to cause irreparable harm to Plaintiff's professional reputation, standing in the trademark industry and harm the goodwill associated with her existing and potential client relationships, thereby leaving her with no adequate remedy at law.

60.     Unless Amazon is temporarily, preliminarily and permanently enjoined from disseminating the ABR rejection emails to Plaintiff's clients and potential clients, Plaintiff will continue to be irreparably harmed, and thus he is entitled to entry of an appropriate temporary restraining order, preliminary injunction and permanent injunction.

## PRAYER FOR RELIEF

Plaintiff requests that this Court grant him claim for relief as follows:

1.     Temporarily, preliminarily and permanently enjoin and restrain Amazon from disseminating the ABR rejection emails to Plaintiff's clients and potential clients;

2.     Entry of an award of presumed damages for Amazon's defamation per se;

3.     Entry of an award of actual damages;

4.     Entry of an award of pre- and post-judgment interest in accordance with applicable law; and

5.     Grant Plaintiff such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury pursuant to Federal Rule of Civil Procedure 38.

DATED this 14th day of July 2023.


**CHEN LAW FIRM, PLLC**

/Weitao Chen/
WEITAO (WALTER) CHEN, ESQ
New York Bar No. 5656079
chen@faan.com
60 Cutter Mill Rd, Suite 100C
Great Neck, NY 11021
Telephone: 718.766.2567
Facsimile: 718.360.9695

*Attorneys for Plaintiff Weitao Chen*