# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WEITAO CHEN,**<br><br>    Plaintiff,<br><br>vs.<br><br>**AMAZON.COM, INC.,**<br><br>    Defendant. | Case Number: 2:23-cv-05324<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff WEITAO CHEN ("Plaintiff") respectfully moves this Court for a Temporary Restraining Order and a Preliminary Injunction against Defendant Amazon.com, Inc. ("Amazon") pursuant to Federal Rule of Civil Procedure 65. This Motion is made and based on the accompanying Memorandum of Points and Authorities, the Declaration of WEITAO CHEN ("Chen Decl."), the Declaration of Yuko Wang ("Wang Decl."), the Declaration of Amy Chen ("Amy Decl."), the pleadings and papers on file herein.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I. INTRODUCTION

This case involves Amazon's continued use of a tragically flawed investigative procedure used for admission into its Amazon Brand Registry ("ABR") platform. Amazingly, multiple in-house attorneys at Amazon have been told and have acknowledged that this policy potentially improperly attributes misconduct committed before the United States Patent and Trademark Office ("USPTO") by a trademark registrant's *prior counsel* to the registrant's *current counsel.*

Instead of correcting this fundamentally flawed investigative procedure, Amazon has instead elected to multiply the potential harm by denying trademark holders' ABR applications and sending them emails explaining that their counsel has "been associated with a [trademark] that has been sanctioned/made invalid by the [USPTO]." (Chen Decl. ¶ 17, Ex. C.) Amazon's application rejection email then advises trademark holders to hire new counsel that has not engaged in *abusive or risky behavior in the past* in order to proceed with their ABR application. (*Id.*) Amazon has sent and continues to send these ABR application rejection emails to clients without taking any steps to confirm *that the client's current counsel has done anything wrong*. (*Id.* ¶¶ 16-17, 22-28, Ex. C; Amy Decl. ¶¶ 9-12, 14-16.)

Plaintiff stands as an unfortunate example of the unnecessary reputational harm that was virtually guaranteed to result from Amazon's negligently enacted investigative procedure and aggressive application rejection emails. Plaintiff is a highly successful intellectual property attorney that specializes in trademark prosecution before the USPTO. (Chen Decl. ¶¶ 4-6.) He has prosecuted thousands of trademark applications before the USPTO without a single

disciplinary action or investigation commenced against him. (*Id*. ¶¶ 7, 31, Ex. A.) He has also never had a disciplinary complaint initiated against him by the state bar in which he is admitted to practice. (Chen Decl. ¶¶ 8-9, Exs. B.) In fact, clients often ask him to take over trademark prosecution files from other attorneys that experience difficulties in the prosecution process or have acted improperly. (*Id*. ¶¶ 13-14.) While Plaintiff's expertise helps his clients traverse the prosecution difficulties, it has, through no fault of his own, caught him in Amazon's reckless spun web and her professional reputation has and continues to be irreparably damaged as a result.

As the facts below reveal, Plaintiff has repeatedly tried to resolve this dispute short of litigation. He has communicated with an Amazon attorney, who acknowledged the flaws in the company's investigative procedure. (Chen Decl. ¶¶ 18-21, 24-25, Exs. D-E; Wang Decl. ¶¶ 11-19, Exs. B-D.) Nevertheless, Amazon has continued to issue the ABR application rejection emails. In fact, another attorney NAZLY AILEEN BAYRAMOGLU, who sued Amazon in the United States District Court of Nevada on the same ground on 05/31/2023, also complained to Amazon in-house attorney about Amazon's flawed investigative procedure, and was assured that Amazon would stop issuing the ABR application rejection emails. Amazon has failed to honor its commitment until a Stipulation and Order was entered on June 20, 2023 by District Judge Andrew P. Gordon. (Chen Decl. ¶ 31, Exs. F.)

Since Amazon has refused to fix its flawed investigative procedures by keeping issuing the ABR application rejection emails, Plaintiff's potential clients continue to refuse to have him act as Attorney of Record for their trademark applications because he is on an "Amazon Blacklist." (Chen Decl. ¶¶ 23, 26-32; Amy Decl. ¶¶ 9-12.) He has suffered and continues to suffer immediate and unnecessary irreparable harm to his professional reputation. (Chen Decl.

¶¶ 23, 26-30, 32; Amy Decl. ¶¶ 9-12, 14-16; Wang Decl. ¶ 19.) Plaintiff now asks this Court to compel Amazon to stop issuing its defamatory emails by granting temporary and preliminary injunctive relief.

## II. RELEVANT FACTS

### A. Plaintiff Has Established an Impeccable Professional Reputation in the Trademark Community.

Plaintiff is an attorney at Chen Law Firm, PLLC ("Chen Law Firm") and manages the firm's trademark prosecution team. (Chen Decl. ¶¶ 4-5.) He is licensed to practice law by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department and is a member of the State Bar of New York. (*Id*. ¶¶ 2, 8-9.) Plaintiff regularly practices before the USPTO. (Chen Decl. ¶¶ 4-6.) He has practiced law since 2018 and has prosecuted thousands of trademark applications before the USPTO. (*Id*.)

Plaintiff has established himself as preeminent trademark attorney with a national and international practice having represented numerous clients in such countries as China, Canada and the United States. (Wang Decl. ¶ 7; Chen Decl. ¶¶ 30-32.) He routinely represents and promotes Chen Law Firm's trademark practice through both on-line and in-person client meetings. (*Id*.; Chen Decl. ¶¶ 30, 32.)

Plaintiff has established an impeccable professional reputation. (Wang Decl. ¶ 7; Chen Decl. ¶ 31.) He has never been disciplined by the USPTO's Office of Enrollment and Discipline ("OED") despite having prosecuted thousands of trademark applications. (Chen Decl. ¶¶ 6-7, Ex. A.) He has also never had a disciplinary action commenced against him by the Disciplinary Board of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department. (*Id*. ¶ 8, Ex. B.) He is also well known to USPTO examiners given the number of trademark registrations that he has prosecuted. (*Id*. ¶ 10.)

The international trademark community is a very small community where attorney members of the community constantly encounter one another both in adversarial proceedings and in conferences and meetings. (*Id*. ¶ 11; Amy Decl. ¶ 13.) International attorney and firm groups discuss all matters in different forum group chats and are constantly in contact. (*Ibid*.) Examples of the communication shared within those groups are new rule proposals or when the USPTO issues sanctions on a filer or representatives. (Chen Decl. ¶ 11.) Such news spreads through these groups immediately. (*Id*.; Amy Decl. ¶ 13.)

The international trademark industry is full of fraudulent agencies that claim to have legitimate United States licensed attorneys on staff to perform filings with the USPTO, but, in fact, do not have such attorneys on staff. (Chen Decl. ¶ 12.) As a result, many foreign applicants seek to engage United States law firms and counsel they can trust and that have not been sanctioned by OED. (*Id*. ¶¶ 12-13.) Thus, maintaining a sterling reputation is essential to developing and maintaining a successful international trademark practice. (*Id*.)

Plaintiff has worked tirelessly to help establish himself and Chen Law Firm as a legitimate United States firm and attorney that international clients can rely on for their USPTO filing needs. (*Id*.;Wang Decl. ¶¶ 7-8.) As a result, clients frequently seek out Plaintiff's expertise when their current Attorney of Record encounters problems with the USPTO during the trademark application process. (*Ibid*.)

Amazon has tarnished Plaintiff's reputation in the national and international trademark community by sending out its false and defamatory ABR application rejection emails. (Chen Decl. ¶¶ 16-17, 22-30, Ex. C; Wang Decl. ¶¶ 10, 17, Ex. A; Amy Decl. ¶¶ 9-12, 14-16.) Potential clients are afraid or simply refuse to have Plaintiff's name listed as Attorney of Record on their trademark applications because he is believed to be included on an "Amazon Blacklist"

that would prohibit them from obtaining ABR approval. (Chen Decl. ¶¶ 26-28; Amy Decl. 9-12, 15-16.) Simply put, Amazon's actions have irreparably harmed, and continue to irreparably harm, the professional reputation of an attorney with a sterling reputation in the international trademark community.

B. **The Amazon Brand Registry Platform.**

The Amazon Brand Registry is an online platform that allows accepted applicants to register their intellectual property with Amazon so that the company can employ its unique technology to prevent, detect and remove infringing and counterfeit goods and content. As such, getting registered by ABR is highly sought after by many trademark owners. (Chen Decl. ¶¶ 14-15; Wang Decl. ¶ 8.)

Admission into ABR is through an application process whereby Amazon investigates the applicant and verifies ownership and registration of certain intellectual property rights, such a trademark, with the USPTO. As part of the ABR application process, a digital code is sent to the Attorney of Record associated with the USPTO associated with the applicant's trademark registration. (*Ibid*.) The Attorney of Record is then obligated to give the digital code to the proper owner of the mark. The mark owner then inputs the digital code to finalize the verification process and obtain ABR registration. (*Ibid*.)

Many of Chen Law Firm's clients seek registration with ABR. Plaintiff serves as Attorney of Record with the USPTO for the marks that seek and have sought registration with ABR through Chen Law Firm. (*Ibid*.) These clients and potential clients do not want their trademark files prosecuted by an attorney that cannot obtain ABR registration because of past USPTO misconduct. (Amy Decl. ¶¶ 9-12, 15-16.) Plaintiff has a sterling reputation with the USPTO, which has allowed him to cultivate a thriving national and international trademark

practice. (Chen Decl. ¶¶ 30-32, Wang Decl. ¶¶ 7-8.) Amazon, however, has caused Plaintiff's current and potential clients to question his fitness for prosecuting their trademark applications by sending its defamatory ABR application rejection emails. (Chen Decl. ¶¶ 16-17, 22-30, Ex. C; Wang Decl. ¶¶ 10, 17, Ex. A; Amy Decl. ¶¶ 9-12, 15-16.)

    C.   **Amazon's Defamatory Conduct.**

On or around March 3, 2023, Plaintiff received notice that multiple clients had their ABR applications rejected after Chen Law Firm sent them their respective verification codes. (Chen Decl. ¶ 16-17; Wang Decl. ¶¶ 9-10.) The reason the applications were rejected by ABR was stated in an email from Amazon. The email states: "we have concluded that the brand/user is currently ineligible for Brand Registry since the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions." (Id. ¶ 17, Ex. C; Wang Decl. ¶ 10, Ex. A.) The email further states: "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past.". (*Ibid*.)

As mentioned earlier, Plaintiff has absolutely no disciplinary record at the USPTO despite having prosecuted thousands of trademark applications. (Chen Decl. ¶¶ 6-7, Ex. A.) He also has never had a disciplinary action commenced against him by the disciplinary board of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York. (*Id*. ¶ 8, Ex. B.) Despite this pristine disciplinary record, Amazon's ABR application rejection email, which was sent to his clients, falsely states that Plaintiff was associated with trademark prosecution conduct that resulted in a mark being sanctioned and/or invalidated by the USPTO. (*Id*. ¶¶ 17, Ex. C; Wang Decl. ¶ 10, Ex. A.) The email also falsely states that the current

Attorney of Record for the mark has engaged in abusive and/or risky conduct while practicing before the USPTO. (*Ibid*.) Adding insult to injury, the email application rejection email advises the client to terminate the current Attorney of Record and engage different counsel in order to obtain ABR registration. (*Ibid*.) Simply put, the statements contained in Amazon's ABR application rejection email are demonstrably false and directly imputes Plaintiff's fitness as an attorney and practitioner before the USPTO. This is a textbook example of defamation per se.

In response, Plaintiff attempted to get Amazon to correct its mistake and withdraw the defamatory ABR rejection emails. (Chen Decl. ¶¶ 18-20 24, Exs. DE; Wang Decl. ¶ 11, Ex. B.) On March 24 and 28 2023, Plaintiff sent two letters to Amazon, and on April 5, 2023, Plaintiff sent another email to Brad M. Behar, outside counsel for Amazon,, and requested a meeting to discuss this issue of Amazon making false statements concerning Plaintiff in its ABR application rejection emails. (Chen Decl. ¶ 18-19, Ex. D; Wang Decl. ¶ 11, Ex. B.)

On April 6, 2023, Brad M. Behar and Plaintiff had a telephonic conference to discuss these issues. During the meeting, Mr. Brad M. Behar indicated that Amazon had implemented an internal process during the ABR investigation whereby the company would rely on certain documentation from the USPTO that listed marks that had previously been flagged for various reasons. (*Id*.; Chen Decl. ¶ 19-20.) This conduct was then attributed to the current Attorney of Record. Mr. Brad M. Behar further stated that Amazon did no further investigation to confirm that the current Attorney of Record was counsel for the client at the time of the alleged questionable conduct because that will involve a lot of document search and research work. (*Ibid*.) Mr. Brad M. Behar and Plaintiff discussed that under Amazon's current ABR investigation procedure, if a mark was previously filed by counsel that was being investigated by OED and a new attorney took over as Attorney of Record, ***the new attorney would be***

*inappropriately flagged and associated with the actions of the past attorney*. (*Id*. ¶ 14; Chen Decl. ¶ 20.) This was a particular concern for Plaintiff since he routinely takes over as Attorney of Record for clients' trademark applications when their engaged representative experiences difficulties during the USPTO examination process. (Chen Decl. ¶¶ 12-13; Amy Decl. ¶¶ 14-15.) Mr. Benjamin Okeke, Amazon's inside counsel, also stated that Amazon had halted the flawed ABR application review procedure given its apparent flaws. (*Id*. ¶ 33; Wang Decl. ¶ 15.)

Since the April 6th meeting, Amazon has continued to use the flawed ABR application review procedure despite Mr. Brad M. Behar's acknowledgement of the apparent flaws and Mr. Okeke's statement that the flawed ABR application review procedure was being discontinued. (Chen Decl. ¶¶ 22, 26-28, 33; Wang Decl. ¶ 17; Amy Decl. ¶¶ 12, 14-16.) Moreover, Amazon has not provided a substantive response to six follow-up emails sent to Mr. Behar. (*Id*. ¶ 21) Most importantly, Plaintiff continues to have her professional reputation tainted by Amazon's defamatory ABR application rejection emails. (Chen Decl. ¶¶ 26-28; Amy Decl. 9-12, 15-16.)

On June 21, 2023, Ms. Ambika Kumar, another attorney for Amazon from a different law firm, notified me that they represent Amazon. A new round of communication with Ms. Kumar lasts a month without any substantive response like before. (*Id*.; Chen Decl. ¶ 24-25.)

Since Amazon's defaming emails, multiple Chen Law Firm clients and potential clients have either refused to have Plaintiff listed as Attorney of Record on their trademark files. For instance, in March of 2023, the owner of US trademark "KADTC" already hired Weitao Chen and Chen Law Firm to file its trademark application. Right before Weitao Chen prepared to file the application, the client learned, from Amazon, that Weitao Chen was on Amazon's list of risky and abusive attorneys. (Amy Decl. ¶ 11.) The client requested that Weitao Chen be removed from the case and that the case be transferred to another attorney of another law firm.

This client then explained that they cannot have Plaintiff's name associated with their mark applications because her name appeared on a list of "Amazon Blacklisted Attorneys" circulating in the international intellectual property community. (*Id*.) The client relationship has been irreparably destroyed. (*Id*.)

Multiple clients complained about Plaintiff being listed as Attorney of Record on their trademark file because she was on the "Amazon Blacklist." (*Id*. ¶ 14.) Chen Law Firm had never received such a complaint. (*Id*. ¶ 14.)

The immediate and irreparable harm being inflicted upon Plaintiff's professional reputation is ongoing. Clients have requested that Plaintiff be removed as counsel of record on their trademark files. (Chen Decl. ¶ 28.) These requests are directly attributable to these clients having received an ABR application rejection email or they have learned that Plaintiff is associated with mark registrations that have been flagged for risky or abusive USPTO conduct during the ABR application review process. (*Id*. ¶¶ 26-28; Amy Decl. 9-12, 15-16.) Each time a client wants to remove his name from their application, the more anxious he gets about this entire situation. (Chen Decl. ¶¶ 29.) He has also suffered professional humiliation and demoralization because Chen Law Firm's clients and prospective clients believe him to be a bad actor that is responsible for the sanctioning and/or invalidation of numerous mark applications with the USPTO. (*Id*. ¶¶ 29- 30.) Plaintiff asks the Court to intervene and immediately stop Amazon from sending out its defamatory ABR rejection emails that are destroying his hard-earned professional reputation in the intellectual property community.

## III. APPLICABLE LEGAL STANDARDS

Temporary restraining orders and preliminary injunctions are extraordinary remedies meant to prevent irreparable loss to a party prior to entry of final judgment. *See Sierra On-Line, Inc. v.*

*Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The standard for granting a temporary restraining order is "substantially identical" to the standards for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Courts consider the following in determining whether to grant injunctive relief: (1) the likelihood of success on the merits; (2) the likelihood of irreparable injury if injunctive relief is not granted; (3) balance of the hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

The Court should grant Plaintiff the relief requested upon proper application of the foregoing legal standards to the facts presented herein.

## IV. <u>ARGUMENT</u>

### A. Plaintiff is Highly Likely to Prevail on His Defamation Claim for Relief.

Plaintiff has currently only asserted a single claim for relief in this action – for defamation. (ECF # 1 ¶¶ 48-61, ECF # 4 ¶¶ 48-61) The facts before the Court demonstrate that Plaintiff is highly likely to prevail on his claim for relief.

To prove defamation, a plaintiff must establish four elements: "(1) a false and defamatory statement . . .; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503-04 (Nev. 2009) (internal quotations and citations omitted); accord Pope v. Motel 6, 114 P.3d 2777, 315 (Nev. 2005). A statement is defamatory when it tends to lower the subject's estimation in the community, excites derogatory opinions about the subject, and holds the subject up to contempt. *Las Vegas Sun v. Franklin*, 329 P.2d 867, 869 (Nev. 1958). Whether a statement is defamatory is generally a question of law for the

court to decide. *Lubin v. Kunin*, 17 P.3d 422, 425 (Nev. 2001). In reviewing an allegedly defamatory statement, the words and their context must be reviewed in their entirety to determine whether they are susceptible to a defamatory meaning. Id. Additionally, if the alleged defamatory statement "imputes a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se," which allows the court to presume damages. Clark Cty. Sch. Dist., 213 P.3d at 503.

Here, Amazon has unquestionably made a false and defamatory statement about Plaintiff by sending out the ABR application rejection email. The email at issue states: "we have concluded that the brand/user is currently ineligible for Brand Registry since the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions." (Chen Decl. ¶ 17, Ex. C; Wang Decl. ¶ 10, Ex. A.) The email further states: "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past.". (Ibid.)

These statements are demonstrably false and defamatory. Plaintiff has never been subject to any disciplinary action by the USPTO despite having prosecuted thousands of trademark applications. (Chen Decl. ¶¶ 6-7, Ex. A.) He has likewise never been subject to discipline by the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York and is in good standing within the jurisdiction. (Id. ¶ 8, Ex. B.) As such, there is simply no basis for Amazon to state that he has engaged in abusive or risky conduct in the past before the USPTO or before judicial, administrative or other governmental body. The statements made about him are simply untrue, false and defamatory, thereby satisfying this element.

Next, the statements made about Plaintiff were unprivileged and published to a third

party. As just discussed above, the statements contained in the ABR application rejection email was clearly defamatory and which is unprivileged by definition. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]he erroneous statement of fact is not entitled to constitutional protection."). The unprivileged, defamatory communication at issue was unquestionably published to multiple third parties because they were sent to Plaintiff's own clients. (Chen Decl. ¶¶ 16-17, Ex. C; Amy Decl. ¶¶ 9-10, 12.) Accordingly, Plaintiff meets this required element.

Amazon's conduct was, at least, negligent in implementing an internal ABR application review process that resulted in dissemination of the false and defamatory ABR application rejection emails to Plaintiff's clients. First, Amazon's internal review process relied on flagged USPTO trademark applications and imputed any wrongful conduct to the currently listed Attorney of Record associated with the file. (*Id.* ¶ 20; Wang Decl. ¶ 14.) Amazon, however, elected to do no further investigation beyond this point to confirm that the attorney suspected of improper conduct before the USPTO was *the current Attorney of Record at the time of the suspected improper conduct*. (Chen Decl. ¶ 20; Wang Decl. ¶ 14.) Any reasonable company even considering sending out content to an attorney's client of the nature contained in Amazon's ABR application rejection emails would and should take all necessary steps to verify the accuracy of the information being relied upon and that the attorney being identified as a bad actor was in fact the bad actor. Moreover, a reasonable company would certainly take such steps if it was going to advise the applicant to fire its current counsel and hire new counsel in order to secure ABR approval. (Chen Decl. ¶ 17, Ex. C; Wang Decl. ¶ 10, Ex. A.) Amazon took no such steps. Had it done so, Amazon would have easily learned that Plaintiff has never been subject to a USPTO investigation or otherwise sanctioned for prosecution conduct. (Chen Decl. ¶¶ 6-7, Ex. A.)

Second, Amazon admitted that its ABR application investigation procedure was flawed and agreed to halt it. (Chen Decl. ¶ 21, 33; Wang Decl. ¶ 15.) This is a clear admission that Amazon's investigation procedure was defective. Couple this admission with the fact Amazon took absolutely no steps to verify whether the attorney flagged by the USPTO for improper conduct during an applicant's trademark application process was the same attorney currently representing the application and it is clear that Amazon's conduct was at least negligent. Moreover, this negligent conduct directly resulted in Amazon issuing the false and defamatory ABR application rejection emails to Plaintiff's clients, thereby satisfying the third required element for defamation.

Finally, Plaintiff is entitled to presumed damages based on Amazon's conduct. Amazon's false and defamatory ABR application rejection emails directly disparage Plaintiff's professional reputation and ability to serve his clients, which constitutes defamation per se and entitles the Court to presume damages in this action. *See Clark Cty. Sch. Dist.*, 213 P.3d at 503. First, the false and defamatory emails were sent directly to his clients. (Chen Decl. ¶ 17, Ex. C; Wang Decl. ¶ 10, Ex. A.) Next, the email contents directly accused him of being an attorney associated with a trademark that had been sanctioned and/or suspended by the USPTO. (*Ibid.*) The email then proceeds to state that he, as the flagged Attorney of Record, has engaged in risky or abusive trademark prosecution practices. (*Ibid.*) These statements unquestionably disparage Plaintiff's professional reputation and ability to service his trademark clients.

Second, Amazon's false and defamatory ABR application rejection email goes even further than to simply disparage Plaintiff's professional reputation – it commands the client to fire his or her current counsel and hire new counsel if it wishes to secure registration. (*Ibid.*) This statement indisputably derides Plaintiff's professional qualifications and abilities to

continue representing his clients in connection with their ABR applications. Furthermore, the statement calls into question his ability to represent these clients in connection with other trademark prosecutions before the USPTO. Accordingly, Plaintiff has demonstrated that he is highly likely to be entitled to presumed damages because Amazon's conduct amounts to defamation per se as alleged in the Complaint.

In sum, the foregoing discussion establishes that Plaintiff has a high likelihood of success on the merits of his defamation claim for relief, which is the sole claim for relief presently at issue in this case. Accordingly, the Court should conclude that Plaintiff has satisfied this required element entitling him to temporary and preliminary injunctive relief aimed at immediately ceasing Amazon from disseminating the false and defamatory ABR application rejection emails to his clients.

### B. Plaintiff's Faces Clear Continued Irreparable Damage to His Professional Reputation Absent Issuance of Injunctive Relief.

Plaintiff has suffered, and will continue to suffer, irreparable harm to his professional reputation if temporary and preliminary injunctive relief is not issued. Simply put, absent entry of such relief, Amazon will continue to disseminate the incontestably false and defamatory ABR application rejection emails to Plaintiff's clients. Moreover, doing so, based on existing evidence, will certainly impair Plaintiff's ability to represent potential trademark clients now and in the future because he is viewed as being on the "Amazon Blacklist."

Courts have recognized that damage to goodwill and professional reputation supports a finding of irreparable harm. *See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc*., 736 F.3d 1239, 1250 (9th Cir. 2013); *Aria Diagnostics, Inc. v. Sequenom, Inc*., 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under this court's precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *accord*

*Rent-A-Center, Inc. v. Canyon Television & Appliance,* 944 F.2d 597, 603 (9th Cir. 1991); *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir. 1987). This is because the damages to goodwill or to one's reputation is often difficult to calculate, thus supporting a finding of irreparable injury. *See Rent- A-Center, Inc.*, 944 F.2d at 603; *Cassim*, 824 F.2d at 795; *accord United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 741 (8th Cir. 2002).

Here, Plaintiff has clearly suffered, and continues to suffer, damage to his professional reputation. Current and potential clients have objected to his continued or prospective representation on their trademark files because he is on an "Amazon Blacklist" of attorneys that have engaged in risky or abusive practices before the USPTO. (Chen Decl. ¶¶ 17, 22-23, 26-28, Ex. C; Amy Decl. 9-12, 15-16.) Some clients have simply stopped communicating with Chen Law Firm after likely receiving Amazon's false and defamatory ABR application rejection email. (Amy Decl. ¶ 11.) Moreover, while Plaintiff and Chen Law Firm have been repeatedly informed that he is listed on an "Amazon Blacklist" of attorneys, there is simply no way of quantifying the number of potential clients that elect not to engage his services or the firm's services based on his apparent blacklisted status. In this regard, the international trademark community is extremely small and news spreads quickly through active forum group chats and other forms of online and offline communications. (Chen Decl. ¶ 11; Amy Decl. ¶ 13.)

Not only has Plaintiff suffered real, cognizable, direct and ongoing harm to his professional reputation as supported by the submitted evidence, he also has experienced and continues to experience continued personal harm through the high likelihood of continuing to have his reputation questioned in the legal profession. As repeatedly set forth herein, Plaintiff has, unjustifiably, had his previously pristine professional reputation called into question as a result of Amazon's defamatory conduct. This has caused him extreme anxiety in professional

settings and caused him to question whether he should be promoting his services on behalf of Chen Law Firm. (Chen Decl. ¶¶ 29-30.) He has characterized his struggles in this regard as "humiliating and demoralizing . . ." despite being one of the preeminent practitioners in his field. (*Id*. ¶ 29.) These fears are real, ongoing and directly relate to the irreparable harm incurred and that continues to be incurred as a result of his professional reputation being wrongly called into question by Amazon's conduct. The irreparable harm suffered as to Plaintiff's professional reputation and his personal struggles related to the same will only be exacerbated at this event. (Id.) Accordingly, Plaintiff has established that he has suffered, and will continue to suffer, irreparable harm to his professional reputation absent entry of the requested temporary and preliminary injunctive relief.

  **C. The Balance of the Hardships Strongly Tips in Plaintiff's Favor.**

  The balance of the hardships in this case strongly tips in Plaintiff's favor, thereby further justifying entry of temporary and preliminary injunctive relief.

  When deciding whether to enter temporary or preliminary injunctive relief, the court must identify the harm that such entry might cause to the defendant and weigh it against the plaintiff's threatened injury. *Earth Island Institute v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010). Moreover, where the relative size and strength of the parties strongly demonstrates that one holds a distinctive advantage over the other, there is less likelihood of harm to the party holding substantially more size and strength. *See Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 726 (9th Cir. 1985).

  Here, it is beyond question that Amazon is one of the largest companies in the world. Plaintiff, on the other hand, is an individual that is personally experiencing direct and ongoing harm to his professional reputation. With this backdrop, Plaintiff is merely asking the Court to

enjoin Amazon from listing him in an online search or other query that results in him being flagged as an attorney that has engaged in risky or abusive conduct before the USPTO. Plaintiff is not asking the Court to require Amazon to take any actions that would, or should, require it to substantially modify or otherwise alter the underlying source of object code being employed by it.

Moreover, Amazon has previously indicated that it was halting this flawed internal investigative process. (Chen Decl. ¶ 33; Wang Decl. ¶ 15.) In this regard, Plaintiff is merely asking the Court to compel Amazon to comply with its previous representations.

In fact, another attorney NAZLY AILEEN BAYRAMOGLU, who sued Amazon in the United States District Court, District of Nevada, complained about Amazon's flawed investigative procedure, and requested the same injunctive relief. An order was entered on June 20, 2023 by District Judge Andrew P. Gordon, by which Amazon stopped issuing the defaming emails against the attorney NAZLY AILEEN BAYRAMOGLU. (Chen Decl. ¶ 33.)

Finally, given Plaintiff's exceptionally strong showing that he has a likelihood of success on the merits, there is little risk that the requested injunctive relief will be improperly granted. Accordingly, the balance of the hardships tips strongly in Plaintiff's favor.

D.      **The Public Interest Favors Issuance of Injunctive Relief.**

The public interest also favors issuance of Plaintiff's injunctive relief. In considering this factor, where an injunction's reach is narrowly tailored and affects only the parties with no impact on nonparties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (internal citations omitted.).

Here, the public interest is neutral or favors the issuance of the requested temporary and

preliminary injunctive relief. First, the requested injunctive relief primarily impacts only the parties to this action – it asks for entry of an order enjoining Amazon from disseminating the false and defamatory ABR application rejection emails to Plaintiff's clients and potential clients. Second, the requested injunctive relief likely benefits the public interest because it serves to curtail the propagation of false and misleading information to commercial consumers. Accordingly, this factor supports issuance of temporary and preliminary injunctive relief as requested by Plaintiff.

### E. A Nominal Bond Should be Required by Plaintiff as Security.

By way of this Motion, Plaintiff is merely asking Amazon to do what it has previously agreed to do – stop issuing the false and defamatory ABR application rejection emails. (Chen Decl. ¶ 20, 33; Wang Decl. ¶ 15.) While Amazon has previously agreed to do so on a global basis, Plaintiff's requested injunctive relief merely relates to himself. He wants Amazon to cease its conduct so that his clients or potential clients are not sent these harmful and reputationally destructive emails. This should require minimum action on behalf of one of the most technologically advanced companies in the world – remove Plaintiff's name from the search of query criteria that currently results in issuance of a false and defamatory communication to his clients. Thus, Amazon is exposed to very little, if any, substantive harm should the Court improperly grant the requested injunctive relief. Accordingly, Plaintiff requests that a nominal bond, if any, be required upon issuance of temporary and preliminary injunctive relief.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court issue temporary and preliminary injunctive relief that enjoins Amazon from:

1. Disseminating any email or other communications in which Plaintiff is stated to have

engaged in abusive and/or risky practices/behavior before the USPTO;

2. Internally listing Plaintiff in any electronic search query or field that results in the dissemination of any email or other communication containing the same or substantially similar language to the ABR application rejection emails;

3. From otherwise communicating to any client or potential client that Plaintiff has engaged in inappropriate, unprofessional or sanctionable conduct before the USPTO or otherwise;

4. Issuance of an affirmative statement that it is subject to temporary and preliminary injunctive relief entered by this Court that Plaintiff has demonstrated a likelihood of success on the merits and that he would suffer irreparable harm should Amazon continue its practice of including him as an attorney that has engaged in inappropriate, unprofessional or sanctionable conduct in its communications to ABR applicants; and

5. Such other relief as the Court deems just and appropriate.

DATED this 24th day of July 2023.

/Weitao Chen/
WEITAO (WALTER) CHEN, ESQ
New York Bar No. 5656079
chen@faan.com
60 Cutter Mill Rd, Suite 100C
Great Neck, NY 11021
Telephone: 718.766.2567
*Facsimile: 718.360.9695*