# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

**WEITAO CHEN,**

     Plaintiff,

vs.

**AMAZON.COM, INC.,**

     Defendant.

Case Number: 2:23-cv-05324

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AN ENTRY OF PRELIMINARY INJUNCTION**

WEITAO CHEN

chen@faan.com

60 Cutter Mill Rd, Suite 100C

Great Neck, NY 11021

Telephone: 718.766.2567

Facsimile: 718.360.9695

*Pro Se / Attorney for Plaintiff*

# **TABLE OF CONTENTS**

I. Summary................................................................................................................................3

II. Facts Clarified....................................................................................................................3

    A. Application Nos. 90717905 And 90613328 Was Put Under Administrative Review Because of Prior Attorney Weibo Zhang's Possible Misconduct.......................................................................4

    B. Application No. 90368225 Was Put Under Administrative Review Because of Prior Attorney Jonathan G. Morton's Possible Misconduct...................................................................................................4

    C. Application No. 90638908 Was Abandoned By Applicant, Not Invalidated Or Sanctioned By The USPTO........................................................................................................................................6

    D. Good Faith Filing Deficiencies In The Regular Prosecution Process Are Different From Sanctionable Misconduct..................................................................................................................................7

    E. The Growth And Success Of Plaintiff's Trademark Practices Come From The Hard Work Of Plaintiff And His Team. Amazon's Speculation That Plaintiff Does Not Have Sufficient Time To Examine And Review The Applications Does Not Stand..................................................................................9

    F. Plaintiff Clients' Nationality Or Origin Is Not A Risk Factor By Itself. Only The Quality Of The Filings Is................................................................................................................................10

    G. Amazon Merely Speculate On Use-Based Trademark Applications Without Any Evidentiary Or Legal Support..................................................................................................................................11

    H. Plaintiff Has No Control Whatsoever Over Applicant's Filing Of Notices Of Infringement (NOIs) At Amazon..................................................................................................................................11

    I. Amazon's Defamatory Emails Targets The Current Attorney Of Record On The USPTO....................12

    J. Amazon's Defamatory Emails Have Long Lasting Effects, And Need To Be Neutralized By Court Order......................................................................................................................................13

    K. The Instant Case Is Factually Distinguishable From Another Amazon Defamation Case Filed In This District..................................................................................................................................14

    L. The Instant Case Is Factually Similar To Another Amazon Defamation Case Filed In The District Of Nevada..................................................................................................................................15

III. Arguments........................................................................................................................16

    A. Plaintiff is Highly Likely to Prevail on His Defamation Claim for Relief...........................................17

Plaintiff WEITAO CHEN ("Plaintiff") respectfully submits this Reply in support of Plaintiff's motion for a Preliminary Injunction against Defendant Amazon.com, Inc. ("Amazon"). This Reply is made and based on the Declaration of WEITAO CHEN ("Chen Decl.) and the accompanying exhibits.

## I.   Summary

Plaintiff does not challenge the USPTO's efforts to deter abuse of U.S. Trademark System or Amazon's intent to deter abuse of Amazon Brand Registry ("ABR"). Instead, Plaintiff, in his everyday practice and as an officer of the court, works with USPTO and Amazon to be an positive actor in maintaining the integrity of the U.S. Trademark System.

Plaintiff does oppose Amazon's fatally defective measure in deterring the abuse of ABR. Amazon's defamatory emails and the widely circulated blacklist of attorneys thus created, fails to identify and target the real bad actors in the U.S. Trademark System. *If a mark was previously filed by counsel that is being disciplined by OED and a new attorney took over as Attorney of Record, Amazon would inappropriately flagged and associated the new attorney with the actions of the past attorney without further investigation*. In Amazon's opposition to Plaintiff's motion, Amazon uses the evidence collected by the said fatally defective measure to make misleading arguments.

Plaintiff uses this Reply mainly to clarify the facts Amazon presented regarding Plaintiff's trademark prosecution conducts, and refute Amazon's misleading arguments.

## II.   Facts Clarified

Out of thousands of applications Plaintiff has prosecuted, Amazon identified 4 applications, trying to define Plaintiff as the "bad actor" in the U.S. Trademark System.

**A.  Application Nos. 90717905 And 90613328 Was Put Under Administrative Review Because of Prior Attorney Weibo Zhang's Possible Misconduct.**

Trademark application Nos. 90717905 and 90613328 represent the exact situations where Amazon would inappropriately flagged and associated the new attorney with the actions of the past attorney without further investigation, if a mark was previously filed by counsel that is being disciplined by OED and a new attorney took over as Attorney of Record.

Both the applications *were submitted by prior attorney* Weibo Zhang, who was later disciplined by the Office of Enrollment and Discipline ("OED") of the United States Patent and Trademark Office ("USPTO"). The applicant sought representation of Plaintiff, and Plaintiff appeared as counsel. Before Plaintiff made any filing to the applications after appearing as counsel, the applications were suspended pending administrative review of suspected improper submissions by the prior counsel, Weibo Zhang. After the application was suspended, Plaintiff withdrew as counsel on both applications. (Chen Decl. ¶ ¶ 4-5, Ex. A and B.)

During the period when Plaintiff served as the attorney of record for the two applications, Plaintiff hasn't made any filing to the applications except filing to appear and withdraw as counsel. However, Amazon uses these two applications as proof that Plaintiff has been associated with misconduct before the USPTO. Amazon still uses the complained fatally defective investigative measures to make its arguments. (*Id.*)

**B.  Application No. 90368225 Was Put Under Administrative Review Because of Prior Attorney Jonathan G. Morton's Possible Misconduct.**

Trademark application No. 90368225 is another case where Amazon would inappropriately flagged and associated the new attorney with the actions of the past attorney, if a mark was previously filed by counsel that is being disciplined by OED and a new attorney took

over as Attorney of Record.

The application *was submitted by prior attorney* Jonathan G. Morton, who was later disciplined by the OED. (*Id.* ¶ 6, Ex. C) The applicant sought representation of Plaintiff, and Plaintiff appeared as counsel. The application was later suspended pending administrative review of suspected improper submissions made by the prior counsel, Jonathan G. Morton. (*Id.*) In this case, Amazon tried to attribute the administrative suspension to Plaintiff's filing of Statement of Use.

Here, it's important to point out the difference between the regular prosecution process of a trademark and unusual disciplinary action on a trademark. Filing a Statement of Use is a trademark's regular prosecution process, while suspension of a trademark for administrative review is related to an unusual disciplinary action. Their differences are obvious: (i) Responsible parties are different. If a Statement of Use is filed, the party who examines it is the Trademark Examining Attorney. If an administrative review suspension is imposed, the suspension must be from the OED. (ii) Response options are different. If a Statement of Use is refused in an Office Action, which happens regularly in prosecution of trademarks, the Applicant may file a response within 6 or 3 months to address the issues presented by the examining attorney. On the other hand, if an administrative review suspension is imposed, no actions can be taken by the applicant until the conclusion of the administrative review and removal of the suspension status. (iii) Reasons or Grounds are different. An Office Action is issued for Applicants to cure good faith errors or deficiencies in the Statement of Use that happened regularly in the prosecution of a trademark. On the other hand, an administrative review suspension is imposed because a disciplined attorney filed the application, and his or her filing may be invalidated subject to further investigation. An isolated filing of Statement of Use is never a ground for imposing an

administrative review suspension, even though the examining attorney later issues an Office Action on the Statement of Use filings. (iv) Results and consequences are different. Errors or deficiencies in Statement of Use filings regularly happen in the trademark application process, and can be addressed by filing a response. On the other hand, an application may be adjudicated invalid if the administrative review finds out that, for example, the signatures are falsified by the prior disciplined attorney. An application may also be removed from administrative suspension status if the administrative review finds out that the prior disciplined attorney did not commit sanctionable conduct on this particular application.  (*Id.* ¶ 7)

In this case, Plaintiff's filing of Statement of Use only prompts the examining attorney to issue a Non-Final Office Action, which is a regular prosecution process of a trademark. A Non-Final Office Action has nothing to do with an administrative suspension, and never be a basis for imposing administrative suspension. The administrative suspension in this case originates from the fact that this application was filed by a prior disciplined attorney, Jonathan G. Morton. The administrative review needs to determine whether the original filing by prior attorney, Jonathan G. Morton, committed sanctionable conduct on this particular application. It has nothing to do with Plaintiff's filing of the Statement of Use. (*Id.* ¶ 8)

Here, Amazon attributes the administrative suspension to Plaintiff's filing of a Statement of Use. Amazon made this conclusion either because Amazon does not understand the basic prosecution process of a trademark, or because Amazon knows but chooses to conveniently neglect it, and mislead the court on these basic facts and logics for its litigation advantage.

**C. Application No. 90638908 Was Abandoned By Applicant, Not Invalidated Or Sanctioned By The USPTO.**

As to trademark application No. 90638908, Amazon uses this application's final

abandonment to prove that Plaintiff is somehow associated with trademark prosecution conduct that resulted in a mark being sanctioned and/or invalidated by the USPTO.

It's important to note the difference between an application being abandoned and an application being sanctioned/invalidated. A trademark application is abandoned when the Applicant fails to take necessary prosecution actions within the specified deadline. On the other hand, sanction or invalidation is an extraordinary action imposed by the USPTO on a trademark application. Their differences are obvious without further illustration. However, since Amazon uses an abandoned application to show Plaintiff is associated with a sanctioned or invalidated trademark, it becomes necessary to illustrate their differences in details: (i) Responsible parties are different. Abandonment results from the active choice or neglect of the applicant. On the other hand, sanction or invalidation is the administrative measure imposed by the USPTO. (ii) Response options are different. An abandoned application may be revived for further prosecution. On the other hand, a sanctioned or invalidated application has no such remedy, except that the basis for sanction or invalidation was later overruled. (iii) Reasons or Grounds are different. Applicants may abandon applications for many different reasons, without any fault on the part of the attorney. The USPTO sanctions or invalidates an application on the ground of disciplined attorney's misconduct on the filing of the application. (*Id.* ¶ 9-10, Ex. D)

Here, this application was abandoned because the applicant gave up the application and chose not to respond to the Office Action. It is not the result of USPTO's sanctions or invalidation. There is no fault at all on the part of Plaintiff.

**D. Good Faith Filing Deficiencies In The Regular Prosecution Process Are Different From Sanctionable Misconduct.**

Plaintiff has prosecuted more than 6000 trademark applications, and about half of them

have been successfully issued certificates of registrations as of the date of this Reply. Plaintiff does not deny that there are good-faith filing deficiencies in the 90368225 and 90638908 applications cited by Amazon in Section B and C. (*Id.* ¶ 8-11) However, Plaintiff does oppose Amazon's position to use the two cited applications to argue that Plaintiff has failed to show a likelihood of success on the merits, because good-faith filing deficiencies are not sanctionable misconduct.

First, the deficiencies identified in the Office Action may not be accurate. USPTO uses software to identify "altered images and/or unoriginal product images", which may wrongly identify unaltered or original images as altered or unoriginal. USPTO examining attorneys also personally examine the product images to further improve accuracy. Human errors can also happen. In these circumstances, Applicants, in response to the Office Action, usually provide product images from different angles, change the picture background, or submit video clips of the product, to further support the prior filing of specimens. (*Id.* ¶ 12)

Second, good-faith filing deficiencies are unavoidable. In maintaining the integrity of the U.S. Trademark System, attorneys like Plaintiff are the first gateway to examine the specimens of use, identify and filter out the unqualified specimen or applications. However, due to the subjective nature of the examination and judgment, attorneys cannot perfectly identify and remove all filing deficiencies. This is why attorneys are only the first gateway in maintaining the integrity of the U.S. Trademark System. The examining attorneys in the USPTO will be the next on duty to do the same job after attorneys make their filings. It is attorneys' duty to strictly comply with legal requirements in filing their applications. It is also the nature of the U.S. Trademark System to have examining attorneys to find deficiencies in attorney's filings, since the System does not expect the filing attorneys to do the perfect examination job in the first

place. (*Id.*)

Third, filing deficiencies are different from sanctionable misconducts. Filing deficiencies are raised and detailed in Office Action by USPTO's examining attorneys in the trademarks' regular prosecution process, which can be addressed by providing arguments and/or different specimens of use. Misconducts subject to sanctions are investigated by the OED, and detailed in Final Orders issued by the Director of the USPTO. Examining attorney's communication in an Office Action regarding filing deficiencies of trademark application is fundamentally different from sanctions in the Final Orders issued by the Director of the USPTO. (*Id.*)

**E. The Growth And Success Of Plaintiff's Trademark Practices Come From The Hard Work Of Plaintiff And His Team. Amazon's Speculation That Plaintiff Does Not Have Sufficient Time To Examine And Review The Applications Does Not Stand.**

Plaintiff graduated from law school in 2018, and has since started his trademark practice. After four years of patient accumulation of professional experiences and business development from 2018 to 2021, Plaintiff's trademark practice began to grow in 2022. Plaintiff led a three member trademark prosecution team, prosecuted around 3,000 applications in 2022. The rule requiring U.S. counsel took effect in 2019. The growth of Plaintiff's trademark practice is not directly correlated to the 2019 rule requiring U.S. counsel. (*Id.* ¶ 13)

Amazon alleges that Plaintiff filed 29 applications in less than 8 hours on January 17, 2022, and could not sufficiently analyze those applications. First, the filing records show that Plaintiff filed 16 applications only, not 29. Second, the filing time is not equivalent to the analysis and examination time spent on the applications. Before filing applications, Plaintiff and his trademark prosecution team members collect and review the documents first. If there are missing documents or information, Plaintiff  and his trademark prosecution team members need

to contact clients for supplement. Only after a batch of applications are well prepared and examined, Plaintiff will file them all together before USPTO. Plaintiff's way of practice does not support Amazon's speculation that Plaintiff does not have sufficient time to examine and review the applications. (*Id.* ¶ 14)

## F. Plaintiff Clients' Nationality Or Origin Is Not A Risk Factor By Itself. Only The Quality Of The Filings Is.

Amazon also alleges that it is a risk factor because the majority of Plaintiff's clients are Chinese-domiciled applicants. First of all, nationality or origin is not a risk factor by itself. Only the quality of the filings is. Nationality or origin just happen to be one aspect of all applications.

There is background information why Chinese-domiciled applicants become Plaintiff's majority clients. First, the 2019 rule requiring U.S. counsel only applies to foreign-domiciled applicants, and does not apply to U.S. applicants. U.S. applicants are allowed to file trademark applications by themselves. Chinese-domiciled applicants are not allowed to do so. Second, the majority of applicants before the USPTO are Chinese-domiciled applicants. Third, the majority of sellers on Amazon are Chinese-domiciled sellers. Most of them need to file U.S. trademark applications in order to protect their trademarks from infringement on Amazon. Fourth, Plaintiff is a Chinese native speaker, and is well equipped to develop this segment of the market, and provide better communication and services to Chinese-domiciled applicants. (*Id.* ¶ 15)

Finally, Plaintiff is also aware of bad faith agencies or applicants within the Chinese community. As "an office of the court", Plaintiff tried to fight off those bad faith applicants or agencies. Plaintiff is Chinese. But more importantly here, Plaintiff is also a U.S. law school graduate and U.S. attorney. Plaintiff is surprised that Amazon designates nationality or origin as a risk factor of Plaintiff's trademark practice. (*Id.*)

### G. Amazon Merely Speculate On Use-Based Trademark Applications Without Any Evidentiary Or Legal Support.

The application must include a statement that the mark is in use in commerce, verified in an affidavit or declaration under 37 C.F.R. §2.20. See 37 C.F.R. §§2.32(a)(5), 2.34(a)(1)(i). A trademark or service mark application for registration under §1(a) of the Trademark Act must include one specimen for each class, showing the mark as actually used in commerce on or in connection with the goods or services identified. 15 U.S.C. §1051(a)(1); 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a)–(b).

The law requires a statement and *one specimen for each class* in the application. The law does not requires *one specimen for each product in one class*. However, Amazon misconstrued the law, and questioned why Plaintiff did not provide specimens for each and every product in a class.

Plaintiff did what the law requires. Plaintiff provides the statement based on applicants' affidavit or declaration. Plaintiff reviews and provide specimens, usually more than one, for each class, which is a higher standard than what the law requires. (*Id.* ¶ 16)

### H. Plaintiff Has No Control Whatsoever Over Applicant's Filing Of Notices Of Infringement (NOIs) At Amazon.

Amazon alleges that 7,000 NOIs were submitted to Amazon by Plaintiff's Clients in 2022, and nearly 80 percent were rejected as unfounded or made in bad faith. First, Amazon provides no statistical data to back up its allegation.

Second, taking it as true, Plaintiff takes no role whatsoever in Applicant's filing of NOIs. All NOIs are independently filed by sellers on Amazon themselves. Applicants are Plaintiff's clients only regarding the trademark prosecution before the USPTO. Plaintiff has never

represented sellers on Amazon in filing NOIs of trademarks before Amazon. Plaintiff has never filed a single NOI of trademark before Amazon on behalf of sellers as of the date of this Reply. Plaintiff has never provided advice to sellers in submitting these NOIs of trademark. Actually, Plaintiff has no knowledge at all as to sellers' filing of NOIs. (*Id.* ¶ 17)

Third, Amazon is in the better position in deterring unfounded NOIs. Sellers on Amazon files NOIs before Amazon to defend their trademark property rights. Fierce and vicious competition may cause unfounded or bad faith NOIs. Amazon, as the online sales platform itself, is free to improve the requirements and procedures for sellers to file NOIs so as to deter unfounded ones. Amazon is also free to approve or deny NOIs filed by sellers according to its internal procedures and standards. Proliferation of unfounded NOIs exposed Amazon's internal systematic defects on quality control of NOIs. Instead of directly addressing those issues, it is weird for Amazon to blame Plaintiff for unfounded NOIs on Amazon, who Plaintiff has no control whatsoever. Even after applicants change their attorneys on trademark application as commanded by Amazon's defamatory emails, new attorneys still do not have control on who, how, when and how many NOIs can be filed on Amazon. (*Id.*)

Amazon and Plaintiff each shall do their own part to maintain the integrity of the U.S. Trademark System. Let Amazon be Amazon to improve its internal NOIs standards and procedures, and let Plaintiff be an attorney to professionally prosecute trademark applications.

## I.   Amazon's Defamatory Emails Targets The Current Attorney Of Record On The USPTO.

In rejecting applicants' ABR application at Amazon, Amazon's email stated: "we have concluded that the brand/user is currently ineligible for Brand Registry since the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that

was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions." The email further states: "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past." (*Id.* ¶ 18)

In explaining the above emails, Amazon took an approach of mechanically dissecting the wordings of the emails, and concluded that the emails targets the original sanctioned attorney, not the current attorney of record, and that the emails states the fact since the current attorney of record does appear to be associated with a sanctioned or invalidated TM by taking over the TM as current attorney of record.

However, taking the emails as a whole by any reasonable person, the first clear inference is that the current attorney of record is targeted since the sanctioned attorney already withdrew. The second clear inference is that the current attorney of record has problems and is unfit for his or her profession, i.e. being associated with trademark prosecution conduct that resulted in a mark being sanctioned and/or invalidated by the USPTO. The third clear is that the client must terminate the current Attorney of Record and engage different counsel in order to obtain ABR registration. (*Id.*)

***These clear inferences are further corroborated by Plaintiff clients' actual response after receiving Amazon defamatory emails.*** Plaintiff's clients complained that Plaintiff was blacklisted by Amazon and unfit for continuing representation, requested Plaintiff be removed from the attorney of record, and stopped engaging in Plaintiff's legal services. (*Id.*)

**J. Amazon's Defamatory Emails Have Long Lasting Effects, And Need To Be Neutralized By Court Order.**

Mr. Benjamin Okeke, Amazon's inside counsel, stated that Amazon had halted the

flawed ABR application review procedure given its apparent flaws. However, Amazon did not comply with its own words to another similarly situated attorney NAZLY AILEEN BAYRAMOGLU, until a settlement order was entered on June 20, 2023 by District Judge Andrew P. Gordon. Mr. Behar also stated to Plaintiff that Amazon will halt the flawed ABR application review procedure, but the same defamatory emails kept sending to Plaintiff's client after his statement. A preliminary injunction is necessary for Amazon to keep its words. (*Id.* ¶ 19)

Amazon's prior defamatory emails are still circulating and have long lasting effects, including Plaintiff being included in a blacklist of attorneys before Amazon's ABR. A blacklist of attorneys are currently circulating in the international IP community. A preliminary injunction also serves to neutralize the defamatory effect of the defamatory emails already sent, and stop Amazon from publishing or indicating a blacklist of attorneys, where Plaintiff is included. (*Id.*, Ex. E)

**K. The Instant Case Is Factually Distinguishable From Another Amazon Defamation Case Filed In This District.**

Amazon's opposition to Plaintiff's motion are copied nearly verbatim from another ABR case filed in this District. See *Zhu v. Amazon.com, Inc.*, Case No. 23-cv-05014 (E.D.N.Y), despite the fact the facts are fundamentally different and distinguishable from the current case. (*Id.* ¶ 20)

In *Zhu v. Amazon.com, Inc.*, Mr. Zhu has been associated with at least one precedential order in which the USPTO issued sanctions for improper conduct. Here, Plaintiff is not associated with any precedential order in which the USPTO issued sanctions for improper conduct. The four applications cited by Amazon do not show Plaintiff is associated with

misconduct causing sanctions or invalidation. (i) Application Nos. 90717905 and 90613328 was put under administrative review suspension because of the prior disciplined attorney Weibo Zhang's possible misconduct on this particular application. (ii) Application No. 90368225 was put under administrative review suspension because of the prior disciplined attorney Jonathan G. Morton's possible misconduct on this particular application. And (iii) application No. 90638908 was abandoned by the applicant, not invalidated or sanctioned by the USPTO. In addition to the fact that Administrative Review Suspension was caused by prior attorneys, Administrative Review Suspension is also different from sanction orders, in that a trademark application may be found valid, and removed from suspension upon conclusion of the administrative review upon prior attorney's original filings. (*Id.*)

In *Zhu v. Amazon.com, Inc.*, Mr. Zhu's signatures often appear alongside the applicants' declaration signatures and were allegedly personally entered on the TEAS submission by the attorney. Here, there are no such abnormal signatures. (*Id.*)

In *Zhu v. Amazon.com, Inc.*, Mr. Zhu was found to be the attorney of record for around 17,801 applications as of 03/23/2023, with Mr. Zhu alone as his trademark prosecution team. Here, Plaintiff is an attorney of record for 6,571 applications as of 06/30/2023. The filings gap between two attorneys are significant. Further, Plaintiff has a three member trademark prosecution team to work on a significantly smaller workload, which guarantees the amount of time and effort spent in reviewing applications before filing. (*Id.*)

**L. The Instant Case Is Factually Similar To Another Amazon Defamation Case Filed In The District Of Nevada.**

In *Bayramoglu v. Amazon.com, Inc.*, Case No. 2:23-cv-00855, a settlement order was entered June 20, 2023 by District Judge Andrew P. Gordon, by which Amazon stopped issuing

the defaming emails against the attorney NAZLY AILEEN BAYRAMOGLU. In that case, Amazon had "no reason to believe that [the plaintiff had] engaged in any professional misconduct before the USPTO". (*Id.* ¶ 22)

Same as here, there is no evidence that Plaintiff had engaged in any professional misconduct before the USPTO. Instead, Amazon provides three applications and misleading explanations, attributing prior attorneys' possible misconduct to Plaintiff on those three applications (Nos. 90717905, 90613328, and 90368225). (*Id.* ¶¶ 4-8, Ex. A, B, and C)

Amazon also provides one application (No. 90638908) and misleading explanations, confusing good faith prosecution deficiencies with sanctionable misconduct. (*Id.* ¶¶ 9, Ex. D) He who has a mind to beat his dog will easily find a stick. *If good faith prosecution deficiencies are allowed to attack an attorney's professionality, no attorney will be safe, including Ms. Bayramoglu, who Amazon had "no reason to believe that [she had] engaged in any professional misconduct before the USPTO".* Ms. Bayramoglu regularly encounters the same good faith prosecution deficiencies. For example, in application No. 97193047, the specimens submitted by Ms. Bayramoglu are refused on the same grounds as Plaintiff's application No. 90638908, i.e. "Digitally created or altered image or mockup is not an acceptable specimen. ". Similarly, Ms. Bayramoglu did not file a response to the Office Action, and the application was abandoned on April 18, 2013. (*Id.* ¶¶ 9-10, and 22, Ex. F)

## III. Arguments

A court may enter a preliminary injunction only if the plaintiff can establish by clear evidence that (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20

(2008).

In this Reply, Plaintiff only supplements the first prong since others are clearly presented in Plaintiff's motion for preliminary injunction.

**A.      Plaintiff is Highly Likely to Prevail on His Defamation Claim for Relief.**

In rejecting applicants' ABR application at Amazon, Amazon's email stated: "we have concluded that the brand/user is currently ineligible for Brand Registry since the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions." The email further states: "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past."

Amazon's statements in the emails are false and defamatory about Plaintiff. Plaintiff has never been subject to any disciplinary action by the USPTO despite having prosecuted thousands of trademark applications. Plaintiff has never caused any trademark being sanctioned or invalidated. The statements made about him are simply untrue, false and defamatory, thereby satisfying this element.

Amazon took an approach of mechanically dissecting the wordings of the emails, and argued that the emails targets the original sanctioned attorney, not the current attorney of record, and that the emails states the fact since the current attorney of record does appear to be associated with a sanctioned or invalidated TM by taking over the TM as current attorney of record.

Amazon's arguments shall be rejected. In reviewing an allegedly defamatory statement, the words and their context must be reviewed in their entirety to determine whether they are

17

susceptible to a defamatory meaning. *Lubin v. Kunin*, 17 P.3d 422, 425 (Nev. 2001). Taking the emails as a whole by any reasonable person, the first clear inference is that the current attorney of record is targeted since the sanctioned attorney already withdrew. The second clear inference is that the current attorney of record has problems and is unfit for his or her profession, i.e. being associated with trademark prosecution conduct that resulted in a mark being sanctioned and/or invalidated by the USPTO. The third clear is that the client must terminate the current Attorney of Record and engage different counsel in order to obtain ABR registration.

Further, Amazon's argument was refuted by Plaintiff clients' actual response actions after receiving Amazon emails. Plaintiff's clients complained that Plaintiff was blacklisted by Amazon and unfit as attorney of record, requested Plaintiff be removed from the attorney of record before the USPTO, and stopped engaging in Plaintiff's legal services. (*Id.* ¶ 18)

Next, the statements made about Plaintiff were unprivileged and published to a third party, here to plaintiff's clients. Amazon's conduct was, at least, negligent in implementing an internal ABR application review process that resulted in dissemination of the false and defamatory ABR application rejection emails to Plaintiff's clients. Finally, Plaintiff is entitled to presumed damages based on Amazon's conduct. Amazon's false and defamatory ABR application rejection emails directly disparage Plaintiff's professional reputation and ability to serve his clients, which constitutes defamation per se and entitles the Court to presume damages in this action. *See Clark Cty. Sch. Dist.*, 213 P.3d at 503. Amazon's false and defamatory ABR application rejection email goes even further than to simply disparage Plaintiff's professional reputation – it commands the client to fire his or her current counsel and hire new counsel if it wishes to secure registration. This statement indisputably derides Plaintiff's professional qualifications and abilities to continue representing his clients in connection with their ABR

applications. Furthermore, the statement calls into question his ability to represent these clients in connection with other trademark prosecutions before the USPTO. Accordingly, Plaintiff has demonstrated that he is highly likely to be entitled to presumed damages because Amazon's conduct amounts to defamation per se as alleged in the Complaint.

In sum, the foregoing discussion establishes that Plaintiff has a high likelihood of success on the merits of his defamation claim for relief, which is the sole claim for relief presently at issue in this case. Accordingly, the Court should conclude that Plaintiff has satisfied this required element entitling him to preliminary injunctive relief aimed at immediately ceasing Amazon from disseminating the false and defamatory ABR application rejection emails to his clients, and the blacklist of attorneys thus created.


DATED this 8th day of August 2023.


/Weitao Chen/
WEITAO (WALTER) CHEN, ESQ
chen@faan.com
60 Cutter Mill Rd, Suite 100C
Great Neck, NY 11021
Telephone: 718.766.2567
Facsimile: 718.360.9695